UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 3, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Crystal H. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-3179-BAH

Dear Counsel:

On December 8, 2022, Plaintiff Crystal H. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9), the parties' dispositive filings[1] (ECFs 14, 16, 17, and 21), and Plaintiff's reply (ECF 22). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion and AFFIRM the Commissioner's decision. This letter explains why.

I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on January 22, 2014, and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 21, 2014, alleging a disability onset of January 1, 2014 in both applications. Tr. 270–78. Plaintiff's claims were denied initially and on reconsideration. Tr. 199–206, 213–16. On December 15, 2016, an Administrative Law Judge ("ALJ") held a hearing. Tr. 98–141. A supplemental hearing was held by a different ALJ on December 7, 2017. Tr. 65–97. Following the hearings, on March 27, 2018, the second ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 13–35.

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Here, Plaintiff filed a motion for summary judgment and Defendant filed a brief. *See* ECFs 14, 16, 17, and 21. I also note that Plaintiff filed multiple copies of her motion for summary judgment. *See* ECFs 14, 16, 17. For clarity, I will refer to the filing at ECF 14 when citing Plaintiff's motion herein.

[2] 42 U.S.C. §§ 301 et seq.

*Crystal H. v. Kijakazi*
Civil No. 22-3179-BAH
October 3, 2023
Page 2

After the Appeals Council denied Plaintiff's request for review of the March 27, 2018 decision, Plaintiff petitioned this Court for review. Tr. 1044–56. The Court then remanded Plaintiff's case to the SSA for further analysis. Tr. 1057–75. A third hearing was held by a new ALJ on June 22, 2022. Tr. 968–1021. That ALJ issued a decision denying Plaintiff's DIB and SSI claims on August 15, 2022. Tr. 938–67. The ALJ's August 15, 2022 decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. §§ 404.984(d), 416.1484(d), 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date." Tr. 944. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "depression/mood disorder, lupus, fibromyalgia, factor V Leiden thrombophilia with history of transient ischemic attack (TIA), bilateral knee osteoarthritis, lumbar degenerative facet hypertrophy; and cervical degenerative disc disease and radiculopathy, status post discectomy and fusion." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "bilateral ulnar nerve inflammation," "headaches," and "obesity." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 945. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> lift, carry, push or pull up to 10 pounds occasionally and less than 10 pounds frequently. She can sit for 8 hours of an 8-hour workday, stand for 4 hours of an 8-hour workday, and walk for 4 hours of an 8-hour workday. She can occasionally climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can frequently stoop or balance. She cannot kneel, crouch, or crawl. She can frequently use the bilateral upper extremities to push, pull, handle, or reach. She can have no more than occasional exposure to extreme temperatures, to bright sunlight, and to dusts, fumes, odors, gases, and poor ventilation. She can have no exposure to hazards such as moving machinery or unprotected heights. She can understand, remember, and carry out simple instructions and routine, repetitive tasks of unskilled work. She can make occasional work-related decisions.

Tr. 947. The ALJ determined that Plaintiff was unable to perform past relevant work as an administrative clerk (DOT[3] #219.362-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 957–58. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 958.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that: (1) the ALJ ignored the 2014 evaluation of Dr. Iqbal Singh; (2) the ALJ failed to propound interrogatories to resolve an evidentiary inconsistency; (3) the ALJ failed to evaluate the opinions of treating sources in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c); (4) the ALJ erred at step five; and (5) the ALJ erroneously evaluated Plaintiff's fibromyalgia. ECF 14-1, at 3–12. Defendant counters that: (1) the ALJ appropriately evaluated the opinions of treating sources and (2) the ALJ appropriately evaluated Plaintiff's subjective complaints related to fibromyalgia in assessing the RFC. ECF 21, at 7–20.

The Court addresses each of Plaintiff's arguments in turn. Plaintiff first argues that the ALJ improperly "ignor[ed]" Dr. Iqbal Singh's July 2014 consultative evaluation. ECF 14-1, at 6 (citing Tr. 617). This argument is without merit. In his evaluation, Dr. Singh provided the following opinion: "Multiple problems this young woman has. I believe due to her multiple problems she is disabled. She has conditions which will never go away and they are chronic. She cannot even take care of her own children and she cannot work any more. She is disabled." Tr.

---

[3] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

617. The ALJ determined that Dr. Singh's "statements regarding the claimant's ability to work are not considered medical opinions, but instead administrative findings dispositive of a case. These issues are reserved to the Commissioner and as such are not entitled to any specific weight." Tr. 955. This evaluation of Dr. Singh's statements was proper. As SSA regulations make clear, opinions that a claimant is disabled "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Accordingly, Dr. Singh's evaluation did not constitute a "medical opinion" and the ALJ was therefore not required to analyze the evaluation under the process for considering the medical opinions of treating sources outlined in these regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff also argues that the ALJ should have resolved the "inconsistency" between Dr. Singh's evaluation and the opinion of Dr. Pavan Sawhney by "propound[ing] interrogatories to each doctor" pursuant to HALLEX I-2-5-42. ECF 14-1, at 6; *see also* HALLEX I-2-5-42, 1994 WL 637376 (last updated Jan. 21, 2020) ("The ALJ may obtain interrogatories at the request of the claimant or representative, or on his or her own initiative."). But, as discussed above, the ALJ properly characterized Dr. Singh's evidence as not constituting a "medical opinion" and was thus not required, pursuant to 20 C.F.R. §§ 404.1527(c) and 416.927(c), to evaluate it as such. Moreover, while the ALJ recounted the results of a 2014 neurological examination conducted by Dr. Sawhney, *see* Tr. 950–51, the ALJ did not evaluate or assign weight to any *opinions* proffered by Dr. Sawhney. *See* Tr. 938–67. Because the ALJ either dismissed or did not evaluate the opinions of these two treating sources, it is unclear how the ALJ's disinclination to exercise their discretion to obtain interrogatories "result[ed] in prejudice" to Plaintiff. *Mitchell v. Kijakazi*, No. 4:20-cv-04316-DCN-TER, 2022 WL 5434232, at *4 (D.S.C. June 29, 2022) ("[A]lthough[] HALLEX does not have the force of law, a failure to follow its procedures that results in prejudice to the claimant constitutes reversible error."), *report and recommendation adopted*, 2022 WL 4494292 (D.S.C. Sept. 28, 2022). Accordingly, this argument also fails.

Plaintiff next contends that the ALJ "failed to evaluate the opinions of . . . treating sources in accordance with" 20 C.F.R. §§ 404.1527(c) and 416.927(c). ECF 14-1, at 4. Specifically, Plaintiff avers that "[t]he ALJ, using the 'Treating Source' rule, should have determined that the opinions of Dr. Nasseri and Steven Sullivan, PA-C were consistent with Dr. Singh's Consultative Evaluation and found [Plaintiff] disabled under Listing 14.09(D)."[4] *Id.* at 8. Plaintiff's argument is unavailing for several reasons. First, the one-page opinion of Steven Sullivan, PA-C does not opine or suggest that Plaintiff's impairments meet or equal Listing 14.09D. *See* Tr. 1360 (indicating, by way of not circling certain "symptoms or signs" relevant to Listing 14.09D, that Plaintiff did not experience any constitutional symptoms or signs at a "marked" level). Moreover,

---

[4] The SSA's Listing of Impairments (the "Listings") describes, "for each of the major body systems[,] [the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity . . . ." *Figgs v. Saul*, No. 1:20-CV-00334-JMC, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021). At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular Listing. *See id.*

Dr. Singh's 2014 evaluation does not even *discuss* Listing 14.09D. *See* Tr. 616–17. Therefore, the ALJ could not possibly have determined that Plaintiff met or equaled Listing 14.09D based upon any alleged consistency between Mr. Sullivan's and Dr. Singh's evaluations. Furthermore, the ALJ rejected the November 2017 opinion of Dr. Nasser Nasseri, who opined that Plaintiff's "symptoms stemming from the diagnosis of fibromyalgia [have] equaled" Listing 14.09D. Tr. 937, 956. The ALJ gave Dr. Nasseri's opinion "little weight" because Dr. Nasseri "did not specify the degree of [Plaintiff's] limitations." Tr. 956. Given this, the ALJ also could not have concluded that Plaintiff met or equaled Listing 14.09D based upon the consistency of Dr. Nasseri's opinion with any other opinions. Accordingly, Plaintiff's argument that the ALJ erroneously evaluated these opinions is without merit.[5]

The Court next turns to Plaintiff's arguments regarding step five of the sequential evaluation process. Plaintiff argues that the ALJ erred at step five by determining that Plaintiff could perform three separate jobs, all of which require "frequent use of the hands," despite Plaintiff having "continuously complained about numbness and tingling with pins and needles sensation in her hands[.]" ECF 14-1, at 10–11. However, a careful review of the ALJ's decision reveals that the ALJ took note of Plaintiff's hand issues in developing the RFC. *See, e.g.*, Tr. 944 ("I find that these impairments related to the upper extremities are nonsevere; however, I have considered them when assessing the claimant's [RFC] and find that she can only frequently use the bilateral upper extremities to push, pull, handle or reach[.]"); Tr. 949 ("Pain management notes dated March 18, 2014 show that the claimant had neck pain radiating to the left upper extremity into the hand, with numbness, tingling, and weakness in the entire hand."). Plaintiff does not argue that the ALJ improperly evaluated any evidence related to Plaintiff's hand issues, or that the ALJ failed to reconcile evidentiary inconsistencies related to these issues. As such, I find that the ALJ adequately supported their determination that Plaintiff could perform jobs requiring frequent hand usage.

Plaintiff also argues that the ALJ erred at step five by determining that Plaintiff could perform the job of "polisher," which requires the use of moving machinery, despite the RFC's restriction against any exposure to this type of hazard. ECF 14-1, at 11. However, the ALJ also determined that Plaintiff could work as a document preparer and a call out operator. Tr. 958. Because the ALJ identified two jobs existing in significant numbers in the national economy, and because Plaintiff does not challenge the ALJ's determination regarding these jobs, any step-five error was harmless. *See Leggett v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1405, 2013 WL

---

[5] Before turning to Plaintiff's other arguments, the Court briefly notes Plaintiff's objections to the opinions offered by various physicians in this case. *See, e.g.*, ECF 14-1, at 6 ("Dr. Sawhney gave no justification for her total disagreement with her colleague"); *id.* at 7 ("How could Dr. Sawhney turn her back on all of the research and accuse [Plaintiff] of malingering?") *id.* at 8 ("Dr. Winkler either failed to see these reports or chose to ignore them.") (italics omitted). While Plaintiff clearly disagrees with the observations made by some of these sources, the Court's review is limited to the findings made by the ALJ, rather than those of sources contained in the record. *See* 42 U.S.C. § 405(g); *accord Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the Court does not consider the alleged errors of Plaintiff's treating sources for the purpose of resolving this appeal.

1352298, at *3 (D. Md. Apr. 2, 2013) (holding that although "the [DOT] numbers for two of the three sedentary jobs noted by the VE were inaccurate," any step-five error was harmless because "no such errors existed as to the other job identified by the VE," which existed in significant numbers in the national economy).

Finally, the Court examines Plaintiff's contention that the ALJ contravened *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) in evaluating Plaintiff's fibromyalgia. Plaintiff's *Arakas* argument is twofold. First, Plaintiff contends that the ALJ "ignored [Plaintiff's] testimony about the flares that can occur up to eight times a month . . . as well as the co-morbidities of depression, 'fibro fog' and migraines which can accompany a fibromyalgia flare." ECF 14-1, at 11. However, a careful review of the ALJ's decision belies this argument.[6] *See, e.g.*, Tr. 944 ("There is evidence of some headaches, particularly during a 'flare' (Exhibit 16F at 23-24)."); Tr. 950 ("She explained that she had a depression meltdown a few weeks earlier[.]"); Tr. 951 ("For her fibromyalgia, she still has active symptoms like the headache, fatigue, and insomnia.").

Second, Plaintiff avers that the ALJ demonstrated "a lack of understanding of" fibromyalgia by asking Plaintiff during the hearing if she "forget[s]" to take her medicine because she is "just lazy." ECF 14-1, at 12. To be sure, the ALJ should have phrased this question in a more sensitive manner. But Plaintiff's response to the ALJ makes clear that any alleged misunderstanding regarding the source of Plaintiff's forgetfulness was remedied during the hearing. *See* Tr. 989 ("No. Sometimes I -- like I'm forgetful or like with -- I guess they call it like fibro fog. Sometimes I get confused."). More importantly, Plaintiff identifies no aspects of the ALJ's *decision* to support her argument that the ALJ lacked an understanding of Plaintiff's fibromyalgia. *See generally* ECF 14-1. Nor does Plaintiff argue that the ALJ discredited Plaintiff's subjective complaints of the disease. *See generally id.* For these reasons, the Court is unpersuaded that the ALJ's decision failed to comport with *Arakas*.[7]

My review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were

---

[6] To be sure, the ALJ's decision contains no reference to fibromyalgia "fog." Tr. 938–67. However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [their] decision[.]" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

[7] As a final matter, the Court notes several undeveloped arguments and passing remarks made in Plaintiff's motion. Plaintiff notes that "[t]he ALJ denied [her] claim because [they] 'improperly cherry-picked, misstated, and mischaracterized facts from the record[.]'" ECF 14-1, at 8 (citations omitted). However, Plaintiff fails to identify any evidence which was wrongly characterized or "cherry-picked." Her failure to do so is fatal to this argument. *See Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) ("The claimant has the burden of production and proof in Steps 1–4."). Plaintiff also suggests in a footnote that if the ALJ had given more than "partial weight" to an opinion proffered by Andrea Shafer, CRNP, "a finding of disability would have been mandated." ECF 14-1, at 8 n.4. However, Plaintiff does not argue that the ALJ erroneously evaluated Ms. Shafer's opinion, so the Court does not treat Plaintiff's observation as an argument. *See id.*

*Crystal H. v. Kijakazi*
Civil No. 22-3179-BAH
October 3, 2023
Page 7

applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Governed by that standard, I find that the ALJ's decision is supported by substantial evidence and that remand is unwarranted.

## V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECFs 14, 16, 17, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge